STATE OF VERMONT

ENVIRONMENTAL COURT

Town of Hartford, Plaintiff,   }
          }
v          } Docket No. 203-10-99 Vtec
          }
Kathryn O' Connell-Kivler,  }
Defendant.       }

<u>Decision and Order on Town' s Petition for Contempt and Town's Rule 70 Motion</u>

The Town of Hartford has moved for specific enforcement of the Stipulation for Final Order entered into by the parties and entered as an order of the Court (' the Consent Order" ) in this matter on May 26, 2000. Defendant was represented by counsel as of the May 2000 stipulation, but represented herself in these enforcement proceedings; the Town is represented by Kimberlee J. Sturtevant, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Defendant owns a parcel of land located easterly of Kriskarli Drive, part of a subdivision shown on a 1997 plan entitled " Minor subdivision for Katherine O' Connell-Kivler, O' Connell Court, Hartford, Vermont" recorded in Hanging File 329A in the Town' s land records. The Town originally brought the above-captioned zoning enforcement complaint against Defendant based on her commencement of work to relocate the subdivision roadway known as O' Connell Court so that it is located entirely within the limits of the right-of-way shown on that plan, without having first obtained a permit to do so. In connection with the relocation, Defendant performed excavation work as shown on Exhibits 5A through 5F, referred to in the settlement order (Exhibit 107-1 through 107-6 in the present proceedings). Defendant and the Town stipulated to the settlement of that enforcement action, authorizing her to "complete [the] work associated with the relocation of O' Connell Court" in accordance with the following requirements, and requiring her to pay a $2,000 fine:

A. Defendant shall fill and re-grade all areas where excavation work created a cut into banks adjoining O' Connell Court and re-grade the filled area to establish a slope of no more than 5 (horizontal) on 1 (vertical). Defendant shall fill and re-grade the cut area adjoining the property of Richard and Patty Spear as shown on Exhibits 5B and 5C no later than June 30, 2000.

B. Defendant shall re-grade and reseed all areas disturbed by work associated with relocation of O' Connell Court. Defendant shall re-grade and reseed the area adjoining the Spear property no later than June 30, 2000.

C. Defendant shall reuse on site or remove from the property all debris or stockpiled material associated with the relocation of O' Connell Court.

D. Defendant shall complete all work required above by September 30, 2000, except the work which is required to be completed by June 30, 2000, which work must be completed by that date.

The stipulation was drafted by the Town' s attorney and printed on the Town' s attorney' s letterhead. It must be interpreted against the drafter in the event of ambiguity.

For the purposes of analyzing and discussing the areas excavated in association with the relocation of O' Connell Court, a diagram of the four areas was admitted into evidence as Exhibit 102; this decision refers to those areas: Area 1 between O' Connell Court and Defendant' s home property, along the first stretch of O' Connell Court; Area 2 between O' Connell Court and Defendant' s home property, along O' Connell Court after it makes a 90-degree turn; Area 3 in front of the Spears' house (marked " neighbor' s house" on Exhibit 102); and Area 4 along O' Connell Court across the Spears' driveway on property intended as a future right-of-way to three additional lots in the subdivision. The photographs in evidence as Exhibits 107-1 through 107-6 show the areas where the excavation work had created a cut into the banks adjoining O' Connell Court, and show the stockpiled material along the sides of the newly-configured O' Connell Court. The photographs in evidence as B-1 and B-2, dating from May 1997 before the excavation work had been done, show that the grass growing on the native soils was sparse and dry relative to the prepared lawn in front of Defendant' s house. The native soil is sandy and gravelly and drains easily, drying out the vegetation relatively quickly in the absence of watering.

Defendant did reuse on site or did remove all debris and stockpiled material associated with the relocation of O' Connell Court. The debris and stockpiled material had been removed by June 28, 2000 in Area 3 adjoining the Spear property, and by approximately September 30, 2000 for the remainder of the areas.

Defendant did fill and re-grade all the areas where excavation work had created a cut into banks adjoining O' Connell Court and did re-grade the filled area to establish a slope of no more than 5 (horizontal) on 1 (vertical). She did this work using the material that had been removed from the areas where O' Connell Court was to be relocated. Because these native soils are sandy and gravelly, this material contained more stones and was more sandy and drier than new topsoil imported into the area would have been. Nothing in the Consent Order required the filling and regrading to be done with imported topsoil or with materials other than those stockpiled on the property. All four areas had been filled and regraded before approximately September 30, 2000, except that Defendant accomplished the work to fill and re-grade the cut area in Area 3 adjoining the property of Richard and Patty Spear by June 28, 2000.

After regrading, Defendant did reseed all areas disturbed by work associated with relocation of O' Connell Court. Although not specified in the Consent Order, ' reseeding' reasonably includes the raking or other similar preparation of the ground surface to accept seed; the spreading of a grass seed mix, the spreading of some type of mulch, and watering as necessary so that the seed germinates and grows, with replacement reseeding of any area that does not germinate and grow.

The term ' reseeding' by itself without further specification for maintenance or replacement of does not include any mowing, maintenance, repair or replacement of the reseeded area after that first crop of grass germinates and grows successfully, whether due to drought conditions, winter kill or any other reason not caused by Defendant. Also, the term ' reseeding' by itself without further specification does not include the addition of imported topsoil, the rolling or compaction of that topsoil, or the installation of an in-ground temporary irrigation system, even though those actions are suitable to be included in the installation of a lawn by a professional landscaper who will be guaranteeing the work for at least a year after installation.

Defendant accomplished the work required under the Consent Order to reseed Area 3 adjoining the Spear property no later than June 30, 2000, by seeding, mulching with hay, and watering as necessary to promote the germination and growth of the seeds. The grass germinated and grew adequately, except in the area by the telephone pole which is used as a pathway from O' Connell Court onto the Spear property and therefore was prevented from growing for a reason beyond Defendant' s control. Defendant accomplished the work required under the Consent Order to reseed Areas 1, 2 and 4 no later than approximately September 30, 2000, by seeding, mulching with hay, and watering as necessary to promote the germination and growth of the seeds. The grass germinated and grew adequately in the fall of 2000 in all four areas. The Town conceded at trial that some areas had been adequately ' restored' by the end of the 2000 growing season, but that they had all deteriorated considerably in the 2001 growing season.

Whether due to normal winter kill or to unusually dry conditions, by the time of the trial and site visit in this matter in June of 2001, the grass in all four areas had died back somewhat, so that the grassed areas are sparser than a conventionally-installed lawn and weedy vegetation has grown up within the grass. The area most resembling an established lawn is the area adjacent to Defendant' s driveway (Area 2). Defendant continues to maintain and do work on the vegetated areas within the O' Connell Court right-of-way (not covered by the gravel traveled way). However, the Consent Order does not obligate her to do this work, nor does it require those areas to be planted with lawn as opposed to other vegetation, nor does it require that all four areas have the same appearance.

The Town argues that the " intent" of the Consent Order was to " restore" the property to its condition prior to the excavation, as had been stated in an earlier settlement demand by the Town to " restore the property to its condition prior to the excavation, including, at a minimum, remove all stockpiled materials, grade & reseed, etc. . ." First, the Town interprets that demand as the equivalent of installing a lawn on all four areas of the property, although the condition of those areas prior to the excavation was more sparse vegetation than a commercially-installed lawn, suitable to the grass verge of a right-of-way in sandy soil. More importantly, no requirement to " restore the property" is found in the Consent Order, nor is there any reference to the condition of the property prior to the excavation. The Consent Order only requires what it actually requires; a court does not look beyond the four corners of the document to its intent unless there is ambiguity in the language. Moreover, it must be interpreted against the drafter which in this instance is the Town.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that by the end of September 2000, Defendant had complied with the remedial[1] terms of the settlement she entered into with

the Town, entered as a court order on May 26, 2000. No further enforcement of the remedial terms of that order is warranted; this decision and order concludes the above-captioned enforcement action.

Dated at Barre, Vermont, this 18th day of January, 2002.


_____

Merideth Wright
Environmental Judge


**Footnotes**

1. That is, other than Paragraph 5 regarding the $2,000 fine, about which no evidence was presented to the Court and about which the Court makes no findings or conclusions.